**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

THE CITY OF DETROIT,

     Plaintiff,

v.                                          Case No. 22-cv-12205

UNITED STATES DEPARTMENT
OF COMMERCE, et al.

     Defendants.

_____/

**OPINION AND ORDER DISMISSING COUNT I OF THE
AMENDED COMPLAINT AND TERMINATING AS MOOT PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION.**

Plaintiff the City of Detroit ("Detroit") brings this lawsuit against Defendants

United States Department of Commerce and United Census Bureau (the "Census

Bureau" or the "Bureau"), as well as their head officials. (ECF No. 12.) Detroit seeks a

writ of mandamus and asserts that Defendants have violated federal law and the

Constitution. (*Id.*) The claims arise out of the purportedly undercounted 2021 annual

population estimate and the Census Bureau's refusal to consider Detroit's challenge

thereto. (*Id.*)

Related to its request for mandamus (Count I), Detroit also moves for a

preliminary injunction, asking the court to direct Defendants to consider Detroit's

challenge to the Census Bureau's 2021 annual population estimate immediately. (ECF

No. 13.) In response to Detroit's motion, Defendants simultaneously move to dismiss

Detroit's Amended Complaint. (ECF No. 17). Both motions are fully briefed. A hearing is

scheduled for April 4, 2022. (ECF No. 28.)

Having reviewed the briefings, the court finds that it is unnecessary to hold a hearing on certain readily determinable issues. E.D. Mich. LR 7.1(f)(2). For the sake of judicial economy and to streamline the discussion on the upcoming hearing, the court will dismiss Counts I of the Amended Complaint for lack of subject matter jurisdiction and terminate as moot Plaintiff's motion for preliminary injunction (ECF No. 13). The court will decide the remainder of Defendants' motion after the April 4, 2022 hearing.

## I.   BACKGROUND

### A.  The Population Estimate Challenge Program

"Between decennial censuses, the Census Bureau annually prepares statistical estimates of the number of people residing in states and their governmental units." 15 C.F.R. §90.1; *see* 13 U.S.C. §181(a) (requiring the Census Bureau to, "[d]uring the intervals between each census of population, . . . to the extent feasible, . . . annually produce and publish for each State, county, and local unit of general purpose government which has a population of fifty thousand or more, current data on total population and population characteristics.") According to the Census Bureau:

> It is the policy of the Census Bureau to provide the most accurate population estimates possible given the constraints of time, money, and available statistical techniques. It is also the policy of the Census Bureau to provide governmental units the opportunity to seek a review and provide additional data to these estimates and to present evidence relating to the accuracy of the estimates.

15 C.F.R. § 90.2. Consequently, the Census Bureau promulgated regulations "prescribing the administrative procedure available to government units to request a challenge to the most current of [the Census Bureau's] estimates," 15 C.F.R. § 90.1, otherwise known as the Population Estimate Challenge Program (the "Program"). *See*

2

*also* 15 C.F.R. § 90.4. The regulations are codified in 15 CFR Part 90 and effective as of February 4, 2013.

## B.  The Amended Complaint's Allegations

On January 9, 2020, the Census Bureau notified the public that the Program is suspended during 2020 and 2021 to accommodate taking the 2020 decennial census. (ECF No. 12, PageID.143-44; ECF No. 12-4); *see* U.S. Census Bureau, *Temporary Suspension of the Population Estimates Challenge Program*, 85 Fed. Reg. 1100 (Jan. 9, 2020).[1] The notice further stated:

> The Population Estimates Challenge Program will resume in 2022 after the Census Bureau concludes its responsibilities in the conduct of the decennial census. The Census Bureau will resume accepting challenges to the population estimates by publishing in the Federal Register a document that announces the date when it will begin to accept challenges. At that time, states, counties, and other units of general-purpose government may initiate challenges to population estimates under the procedures set forth in 15 CFR part 90. The Census Bureau would accept challenges beginning with the 2021 population estimates. The 2021 population estimates will be based upon the 2020 Census counts and are scheduled for release in 2022.

*Id.* at 1101.

In February 2022, the Bureau posted on its website, "A Federal Register Notice announcing the resumption of the program will be posted in 2022. The program is

---

[1]    "In ruling on a motion to dismiss, the [c]ourt may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss." *Overall v. Ascension*, 23 F. Supp. 3d 816, 824 (E.D. Mich. 2014) (Cohn, J.) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). "The [c]ourt may take judicial notice of public documents and government documents because their sources 'cannot reasonably be questioned.'" *Id.* at 824-25 (citations omitted).

expected to resume in 2023." U.S. Census Bureau, *Population Estimates Challenge Program* (Feb. 2, 2022), https://perma.cc/55QF-2QA5.

In May 2022, the Census Bureau released its estimate of Detroit's population as of July 1, 2021, which allegedly undercounted Detroit population, especially that of Black and Hispanic communities. (ECF No. 12, PageID.142-43, 150.) On August 4, 2022, Detroit's Mayor sent a letter to the Census Bureau to "'request a derivation sheet containing the components used to create the population estimate' for Detroit for the vintage 2021 estimate of the City's population." (ECF No. 12-5, PageID.201.) This is supposed to be the first step in submitting a challenge. (ECF No. 12, PageID.158.) In an email sent on the same day, the Census Bureau's Assistant Division Chief for Estimates and Projections rejected Detroit's request, indicating:

> [W]e cannot honor the request at this time. The Population Estimates Challenge Program was suspended in January 2020, as is a usual practice surrounding the [] decennial census year, and the resumption of the program has not taken effect yet. Presently, we are working to prepare the Federal Register Notice that will reinstate the program. We expect it to be available later this year, which will enable us to accept challenges to our July 1, 2022 estimates.

(ECF No. 12, PageID.158-59; ECF No.17-5.)

On September 20, 2022, Detroit filed the instant lawsuit, seeking (among other relief) an order compelling the Census Bureau to promptly accept and fairly evaluate challenges to the 2021 population estimates. (ECF No. 12, PageID.159; ECF No. 1, PageID.33-34.) Allegedly in response to Detroit's lawsuit, the Census Bureau issued a rule on November 22, 2022, titled "Resumption of the Population Estimates Challenge Program." (ECF No. 12, PageID.159; ECF No. 12-6); *see* U.S. Census Bureau, *Resumption of the Population Estimates Challenge Program*, 87 Fed. Reg. 71240 (Nov. 22, 2022). In relevant part, the rule states:

> The Census Bureau will resume accepting challenges to the population estimates as of November 22, 2022. At that time, states, counties, and other units of general-purpose government may initiate challenges to population estimates under the procedures set forth in 15 CFR part 90. The Census Bureau will accept challenges to the estimates for 2021 and subsequent years in forthcoming estimates series, beginning with the Vintage 2022 series that is scheduled to be published in March and May of 2023. Challenges to previous estimates series will not be accepted. See 15 CFR 90.6(a) ("A request for a challenge to a population estimate may be filed any time up to 90 days after the release of the estimate by the Census Bureau."). Although the Census Bureau has the discretion to accept untimely requests in certain circumstances, see id. § 90.6(b), this is not an appropriate circumstance to exercise such discretion, given the need to prioritize the agency's limited resources to prepare the forthcoming 2022 estimates, and to ensure that sufficient resources and program materials are available to support the operation of the Challenge Program and the evaluation of future challenges received.

*Id.* at 71241. Detroit claims that it understood the rule to mean that the Census Bureau would begin accepting challenges to the 2021 population estimate beginning on November 22, 2022. (ECF No. 12, PageID.160.) On that day, Detroit's Mayor made a second request for the "derivation sheet." (*Id.*, PageID.161; ECF No. 12-7.) On December 5, 2022, Detroit sent a request for a status update, to which the Census Bureau's Assistant Division Chief for Estimates and Projections replied, in relevant part:

> The Federal Register Notice specifies that "[t]he Census Bureau will accept challenges to the estimates for 2021 and subsequent years in forthcoming estimate series, beginning with the Vintage 2022 series that is scheduled to be published in March and May of 2023." 87 Fed. Reg. at 71241 (citing 15 C.F.R. §90.6(a)). "Challenges to previous estimates series will not be accepted." *Id.* "Although the Census Bureau has the discretion to accept untimely requests in certain circumstances," *see* 15 C.F.R. § 90.6(b), "this is not an appropriate circumstance to exercise such discretion, given the need to prioritize the agency's limited resources to prepare the forthcoming 2022 estimates, and to ensure that sufficient resources and program materials are available to support the operation of the Challenge Program and the evaluation of future challenges received." *Id.*
>
> For these reasons, because Mayor Duggan's letter is in furtherance of a challenge to "previous estimates series" that the agency has already announced "will not be accepted," *id.,* we cannot honor Mayor Duggan's

5

request at this time. Following the release of the Vintage 2022 estimates
in 2023 – which will include revised 2021 estimates – we will begin to
respond to requests for derivation sheets, and to accept and process all
properly filed challenges. That release is currently scheduled for May of
2023, for city and town population estimates.

(ECF No. 12, PageID.161; ECF No. 17-6, PageID.343-44.) Detroit alleges that it was

"stymied" by the Census Bureau's response. (*Id.*, PageID.161.)

On December 14, 2022, Detroit filed the Amended Complaint, which becomes

the operative pleading. (ECF No. 12.) The Amended Complaint asserts five claims:

- Count I seeks a writ of mandamus compelling Census Bureau to consider

  Detroit's challenge to the 2021 population estimate immediately. (*Id.*,

  PageID.167-69.)

- Count II alleges a violation of the Administrative Procedure Act ("APA") and asks

  the court to set aside the February 2, 2022 "unpromulgated rule" posted on

  Census Bureau's website because no notice or opportunity for public comment

  was provided. (*Id.*, PageID.169-71; ECF No. 21, PageID.378.)

- Count III alleges a violation of the APA and asks the court to set aside various

  actions purported to be "arbitrary, capricious, an abuse of discretion, or otherwise

  not in accordance with law". (ECF No. 12, PageID.172-76.)

- Count IV alleges a violation of the APA and asks the court to compel the Census

  Bureau to accept challenges to the 2021 population estimates immediately. (*Id.*,

  PageID.176.)

- Count V charges Defendants with violating the Fifth Amendment's guarantee of

  equal protection by undercounting Detroit's Black and Hispanic population,

  employing population estimate methodologies that disproportionately impact

  Detroit's Black and Hispanic residents, and refusing to correct or afford Detroit

the ability to challenge the purportedly racially-biased undercount. (*Id.,* PageID.178-79.) Detroit claims, "Black and Hispanic Detroiters have suffered, and will continue to suffer, discriminatory effects due to the racially-biased undercount reflected in, and reinforced by, the 2021 population estimate." (*Id.,* PageID.179.)

## II.  STANDARD

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Mgmt. Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993). The Sixth Circuit has held that "[i]n determination whether an action 'arises under' federal law, we are governed by the well-pleaded complaint rule, which requires that a federal question be presented on the face of the complaint." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.,* 287 F.3d 568, 573 (6th Cir.2002) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)). "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *See Mich. S. R.R. Co.,* 287 F.3d at 573 (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990)).

## III. DISCUSSION

The federal mandamus statute invoked by Detroit in Count I gives the court "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. "The existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either

jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Carson v. U.S. Off. of Special Couns.,* 633 F.3d 487, 491 (6th Cir. 2011). The relief requested, a writ of mandamus, is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 380 (2004)) (citing *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)); *see also In re Pros. Direct Ins. Co.,* 578 F.3d 432, 437 (6th Cir. 2009) ("[A] writ of mandamus is an extraordinary remedy that we will not issue absent a compelling justification."). To obtain a writ of mandamus, Detroit must establish: "(1) [it] has a clear right to relief; (2) [Defendants] ha[ve] a clear duty to act; and (3) there is no other adequate remedy available to Detroit." *Carson,* 633 F.3d at 491 (citation omitted).

In ascertaining whether the Amended Complaint sufficiently alleges that Defendants owe a duty owed to Detroit, the court first dispenses with Detroit's ostensible misconception that, as a matter of law, challenges to the population estimates can be submitted whenever the Program is operational. (ECF No. 12, PageID.167-68.); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted); *cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The regulations governing the Program reject such belief. Under the 15 C.F.R. § 90.6(a), "[a] request for a challenge to a population estimate may be filed any time up to 90 days after the release of the estimate by the Census Bureau." Thus, even when the Program is operative, there is a time limit as to when challenges can be submitted, which can only be extended if "a governmental unit has a sufficiently meritorious

8

reason" and the Census Bureau exercises its "discretion" to grant an extension. 15

C.F.R. § 90.6(b).

The Amended Complaint fails to sufficiently plead that the Census Bureau has a

duty to consider Detroit's challenge immediately. The Amended Complaint points to the

Census Bureau's January 9, 2020 rule, which states that "[t]he Population Estimates

Challenge Program will resume 2022 after the Census Bureau concludes its

responsibilities in the conduct of the decennial census." (ECF No. 12, PageID.167-68.)

However, nothing in that sentence indicates that the Census Bureau must accept all

challenges immediately once the Program is resumed. Indeed, the January 9, 2020 rule

contemplates a separate announcement when the Census Bureau "will resume

accepting challenges to the population estimates" by stating:

> The Census Bureau will resume accepting challenges to the population
> estimates by publishing in the Federal Register a document that
> announces the date when it will begin to accept challenges. At that time,
> states, counties, and other units of general-purpose government may
> initiate challenges to population estimates under the procedures set forth
> in 15 CFR part 90.

85 Fed. Reg. 1100-01.

The Amended Complaint also asserts that the November 22, 2022 rule "creates

an unambiguous right for [Detroit] to have its challenge considered as of November 22."

(ECF No. 12, PageID.167.) In so doing, Detroit relies on the following language in the

rule: "The Census Bureau will resume accepting challenges to the population estimates

as of November 22, 2022. At that time, states, counties, and other units of general

purpose government may initiate challenges to population estimates under the

procedures set forth in 15 CFR part 90." (*Id*.) However, having reviewed the quoted

language and applying the "standard tools of interpretation," the court does not find

9

Detroit's interpretation supported. *See Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan,* 32 F.4th 548, 557 (6th Cir. 2022) (saying that the interpretation of a regulation begins with its texts and in construing regulatory language, courts "deploy the standard tools of interpretation") (citing cases).

The language quoted by Detroit is the beginning of the last paragraph of the November 22, 2022 rule:

> The Census Bureau will resume accepting challenges to the population estimates as of November 22, 2022. At that time, states, counties, and other units of general-purpose government may initiate challenges to population estimates under the procedures set forth in 15 CFR part 90. The Census Bureau will accept challenges to the estimates for 2021 and subsequent years in forthcoming estimates series, beginning with the Vintage 2022 series that is scheduled to be published in March and May of 2023. Challenges to previous estimates series will not be accepted. See 15 CFR 90.6(a) ("A request for a challenge to a population estimate may be filed any time up to 90 days after the release of the estimate by the Census Bureau."). Although the Census Bureau has the discretion to accept untimely requests in certain circumstances, see id. § 90.6(b), this is not an appropriate circumstance to exercise such discretion, given the need to prioritize the agency's limited resources to prepare the forthcoming 2022 estimates, and to ensure that sufficient resources and program materials are available to support the operation of the Challenge Program and the evaluation of future challenges received.

87 Fed. Reg. 71241. Under the recognized rule of interpretation, the paragraph fragment relied on by Detroit – i.e., the first two sentences – "must be construed in connection with the whole, as to make all the parts harmonize, if possible, and give meaning to each." *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 116 (1879). As such, how "[t]he Census Bureau will resume accepting challenges to the population estimates as of November 22, 2022" and how "[a]t that time, states, counties and other units of general-purpose government may initiate challenges to population estimates" are plainly limited by the succeeding modifying language. *Id.* First, the submission of challenges is constrained by "the procedures set forth in 15 CFR part 90," including the time limitation

prescribed in 15 C.F.R. § 90.6. *Id.* Any confusion thereto is mitigated by repeated references to 15 C.F.R. § 90.6. *Id.* Second, acceptable challenges are limited to the population estimates "in forthcoming estimate series, beginning with the Vintage 2022 series that is scheduled to be published in March and May of 2023." *Id.* This is reiterated by the next sentence, which says that "[c]hallenges to previous estimates series will not be accepted." *Id.* Interpreting the first two sentences as suggested by Detroit – that there is no limitation as to when, how, or what challenges would be accepted once the Program is resumed – would defeat the "cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word," and render the remainder of the paragraph at issue "superfluous, void, or insignificant." *Washington*, 101 U.S. at 116.

Furthermore, the other parts of the November 22 rule make clear that the Census Bureau's review would be limited to future challenges to population estimates in upcoming series, not those already published. The November 22, 2022 rule provides:

- In the "SUMMARY" section:

  The Bureau of the Census (Census Bureau) is resuming the Population Estimates Challenge Program to provide eligible governmental units the opportunity to file requests for the review of population estimates for 2021 and subsequent years in forthcoming estimates series, beginning with the Vintage 2022 series that is scheduled to be published in 2023.

  87 Fed. Reg. 71240-01.

- In the "SUPPLEMENTARY INFORMATION" section:

  With this publication, the Census Bureau provides notice that it is now resuming the Population Estimates Challenge Program to provide eligible governmental units the opportunity to challenge population estimates for 2021 and subsequent years in forthcoming

estimates series, beginning with the Vintage 2022 series that is scheduled to be published in 2023.

*Id.* at 71241.

In short, nothing in the Census Bureau's regulations, the January 9, 2020 rule, or the November 22, 2022 rule obliges the Census Bureau to review Detroit's challenge to the 2021 population estimate immediately. Accordingly, as there is no duty to act, jurisdiction under section 1361 for a mandamus claim does not exist. Count I of the Amended Complaint will be dismissed.

### IV. CONCLUSION

In conclusion, Count I of the Amended Complaint is dismissed for lack of subject matter jurisdiction. Since Detroit's motion for preliminary injunction relies solely on Count I, it is now moot. Accordingly,

Defendants' "Motion to Dismiss Plaintiff's Amended Complaint" (ECF No. 17) is GRANTED IN PART AND TAKEN UNDER ADVISEMENT IN PART, pending the upcoming April 4, 2022 hearing.

Detroit's "Motion for Preliminary Injunction" (ECF No. 13) is TERMINATED AS MOOT.

> s/Robert H. Cleland
> ROBERT H. CLELAND
> UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 28, 2023, by electronic and/or ordinary mail.

> s/Lisa G. Wagner
> Case Manager and Deputy Clerk
> (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\22-12205.DETROIT.DismissCountsI,PI.NH.v2.docx